## ARMOUR & CO. AKTIESELSKAB v. GJERULDSEN et al.

(Circuit Court of Appeals, Fourth Circuit. October 19, 1926.)

No. 2523.

1. Shipping ⊚⟿142.

Clause in bill of lading requiring suit for loss or damage of goods to be brought within six months after delivery *held* valid.

2. Shipping ⊚⟿142.

Under bill of lading requiring suit for lost or damaged goods to be brought within six months, libel commenced after six months from delivery was properly dismissed.

3. Shipping ⊚⟿142.

Clause in bill of lading limiting time for suit for loss or damage to goods applies to claim for shortage in delivery.

4. Shipping ⊚⟿142.

Correspondence between shipper and representative of charterer relative to adjustment of claims *held* not waiver on part of vessel, or owners, of provision in bill of lading limiting time for bringing suit.

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Libel by Armour & Co. Aktieselskab against G. A. Gjeruldsen, master and claimant of the steamship Hesperos, wherein said respondent filed a petition under the fifty-sixth admiralty rule against E. I. Du Pont de Nemours Powder Company. From a decree dismissing the libel and petition, libelant appeals, and respondents cross-appeal. Affirmed.

Joseph K. Inness, of New York City, and George M. Lanning, of Norfolk, Va. (Duncan & Mount, of New York City, and Baird, White & Lanning, of Norfolk, Va., on the brief), for appellant and cross-appellee.

Henry H. Little and Braden Vandeventer, both of Norfolk, Va. (Hughes, Little & Seawell and Hughes, Vandeventer & Eggleston, all of Norfolk, Va., on the brief), for appellees and cross-appellants.

Before ROSE and PARKER, Circuit Judges, and SOPER, District Judge.

PARKER, Circuit Judge. This is an appeal and cross-appeal in admiralty, from the final decree of the District Court for the Eastern District of Virginia, dismissing both the libel of Armour & Co. Aktieselskab against the steamship Hesperos and the petition of the master and claimant, filed under the fifty-sixth admiralty rule, against the E. I. Du Pont de Nemours Powder Company. Libelant claimed $26,657.71 damages for alleged shortage in delivery of cargo shipped on the Hesperos from New York to Copenhagen, in April, 1919. The answer of the master and claimant denied liability, but averred that, if liability existed, there should be a recovery over against the Du Pont Company.

The Hesperos is a Norwegian steamship. On January 23, 1915, she was chartered by her owner to the Du Pont Company for a period of about six years, under a whole time charter providing that the owner should provide and pay the officers and crew, and should maintain the vessel in a thoroughly efficient state during the term, that the owner should not be responsible for short delivery, and that the charterer should indem-

nify the owner against all consequences or liabilities that might arise from the captain's signing bills of lading or otherwise complying with same. It was under these provisions that the petition was filed by the master and claimant, under rule 56; but, in view of the disposition made of the case, the points raised by the petition need not be further considered.

On March 4, 1919, the Du Pont Company chartered the Hesperos to the Kerr Steamship Company, Inc., for one voyage, from an American port to one of named European ports, and under this charter the Kerr Steamship Company loaded and dispatched her on a voyage from New York to Copenhagen, including in the cargo certain shipments of Armour's products consigned to libelant. Bills of lading covering the shipments made to libelant were issued by the Kerr Steamship Company, and were signed by that company in the name of the master, by the company as agent. The bills of lading contained the following provisions:

"The carrier shall not be liable for any loss, shortage of, or damage to goods unless notice of claim therefor be presented in writing to the carrier or to the master or agent of the vessel before removal of the goods. No suit or proceeding to recover for or upon any claim or demand shall be maintained against the carrier or vessel or owners thereof, unless commenced within six months after the delivery of the goods by the carrier, and the lapse of such period shall be deemed a complete bar to recovery in any such suit or proceeding not sooner commenced, notwithstanding the carrier may be a nonresident or foreign corporation."

The Hesperos arrived at Copenhagen May 29th, where, on account of the congestion of the port, she was anchored in the outer harbor until July 1st. She was then taken to the discharging pier, where unloading was commenced and continued until August 8th. Notice of claim of damages on account of shortage was not given in writing to the owner or to the master of the vessel prior to the removal of the goods, or at any other time. From November, 1919, to April, 1920, claims in writing were made by libelant upon the Kerr Steamship Company, which were acknowledged by C. K. Hansen, who was broker of the Kerr Steamship Company at Copenhagen. In a letter acknowledging receipt of certain of the claims, Hansen notified libelant that they had been forwarded to Assuranceforeningen Skuld, who represented the Kerr Steamship Company's protection and indemnity club at Copenhagen and

would protect all claims on shortages on the ship. Thereupon libelant entered into correspondence with Assuranceforeningen Skuld, which was continued until December, 1921, in an effort to settle the claims. This libel was filed January 12, 1922.

[1, 2] Many interesting questions have been raised on the argument and in the briefs as to whether or not there was in fact a shortage, as to the responsibility therefor, as to the right of the owner to recover over against the first charterer in case there should be a recovery by libelant, and as to the necessity of notice of claim of shortage before the removal of the cargo from the wharf; but, in the view which we take of the case, it is unnecessary to decide or discuss any of these questions. We think that the learned District Judge properly dismissed the libel, on the ground that the suit was not commenced within six months after the delivery of the goods. The validity of the clause limiting the time within which suit may be brought is too well settled to admit of doubt. The Susquehanna (C. C. A.) 296 F. 461; Id. (D. C.) 291 F. 698; The Turret Crown (C. C. A.) 284 F. 439, affirming 275 F. 961, certiorari denied, Vulcanite Roofing Co. v. Commonwealth S. S. Co., 262 U. S. 742, 43 S. Ct. 520, 67 L. Ed. 1210; Railroad Co. v. Harriman, 227 U. S. 657, 33 S. Ct. 397, 57 L. Ed. 690; The Queen of the Pacific, 180 U. S. 49, 21 S. Ct. 278, 45 L. Ed. 419.

We see no force whatever in the contention that the clause should be held not to apply to claims for shortage in delivery on the theory that, as to such shortage, there has been no delivery. The language is all-inclusive, and embraces claims of every character; and, assuming that it would have no application to the case of the loss of an entire shipment, as to which there would be no delivery whatever, and consequently no delivery date from which to compute the period of limitation, there is no reason to deny its application to cases where there is a delivery under the bill of lading and the claim arises out of shortage therein. On the other hand, there is every reason for holding it applicable that there is in case of damage in shipment; for in both cases the ground of the claim, whether it be shortage or damage, is discovered while the goods are being delivered, or as soon as the delivery is complete, and the purpose of the clause requiring suit within the period limited after the delivery is that "the parties shall not suffer from death, disappearance of witnesses, destruction of documents, or failure of

memory." Furthermore, not only does the language of the clause make no exception of claims for shortage in delivery, but the requirement in the preceding clause as to notice of claim before removal expressly includes claims for "loss, shortage of and damage to goods," and, on the principle noscitur a sociis, we may fairly assume that the word "claim," as used in the clause limiting time for suit, was intended to include any claim of the kind specified in the preceding clause.

[3] For the reasons stated, we have no hesitation in holding that the provision of the bill of lading to the effect that no suit or proceeding shall be maintained against the carrier, unless commenced within six months after delivery of the goods, applies to claims for shortage in delivery, as well as claims for damage. And this we understand to be the holding in The Susquehanna, supra, where the suit involved a claim for shortage in delivery, as well as a claim for damage, and where the point was necessarily decided. We have carefully examined the cases relied on by libelant, and we do not think that they are applicable here.

[4] Nor do we think that libelant has shown, on the part of the vessel or its owners, any waiver of the provision of the bills of lading in question. In this connection, libelant relies upon the correspondence with Hansen and Assuranceforeningen Skuld. But neither the vessel nor its owner had anything to do with any of this. The claims of libelant were addressed to the Kerr Steamship Company, and in this way came into the hands of C. K. Hansen, its broker. Hansen acknowledged receipt of the claims, and stated that he had referred them to Assuranceforeningen Skuld, "who represents the Kerr Steamship Company's protection and indemnity club here." Nowhere does it appear that claim was made upon the vessel, her master, or her owner, or that Hansen or Assuranceforeningen Skuld, in any of the correspondence or dealings, purported to represent them, or to represent any one other than the Kerr Steamship Company. It is said that Hansen was agent for the vessel, as well as for the Kerr Steamship Company. This fact is immaterial, when it appears that Hansen did not act or purport to act for the vessel or her owner, but merely for the Kerr Steamship Company.

We agree with the District Judge that "it is perfectly clear that he was acting, not in his capacity as agent of the ship, assuming he was agent of the ship, but was acting in that respect exclusively as agent for the Kerr Steamship Company, because his letter shows he is speaking on its behalf." There is no evidence that the vessel or her owner, or any person representing or purporting to represent them, ever entered into any negotiations with libelant looking to a settlement of libelant's claim. Consequently there is no evidence whatever of any waiver on the part of the vessel or her owner of the clause of the bills of lading limiting the time for suit.

The decree dismissing the libel was correct, and same is accordingly affirmed, with costs.

Affirmed.